In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00077-CR


______________________________




LAVANDA GAIL BIGHAM, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 124th Judicial District Court


Gregg County, Texas


Trial Court No. 33259-B




 




Before Morriss, C.J., Ross and Carter, JJ.


Memorandum Opinion by Chief Justice Morriss



MEMORANDUM OPINION



 Lavanda Gail Bigham drove the vehicle allowing two other women to commit aggravated
robbery against Jose Moreno, resulting in Bigham being charged with the crime as well. Bigham
pled guilty to a charge of aggravated robbery and submitted the matter of her punishment to a Gregg
County jury. At trial, Bigham argued for a five-year sentence, the minimum under the law; the State
argued for ten years; the jury recommended a sentence of six years; and the trial court sentenced
Bigham to six years. Bigham now appeals, contending that, in four different ways, her trial counsel
was constitutionally ineffective. We overrule Bigham's sole point of error and affirm the trial court's
judgment because we hold the record does not demonstrate Bigham's counsel was ineffective in
failing to (1) object to the State's fact hypotheticals during voir dire, (2) strike a crime victim from
the  jury,  (3)  object  to  the  State's  reference  to  community  supervision  during  jury  argument,
and (4) call Bigham as a witness.

 The standard for testing claims of ineffective assistance of counsel is set out in Strickland
v. Washington, 466 U.S. 668 (1984). To prevail on such a claim, an appellant must prove by a
preponderance of the evidence that (a) his counsel's representation fell below an objective standard
of reasonableness and (b) his counsel's deficient performance prejudiced his defense. Id.; Tong v.
State, 25 S.W.3d 707, 712 (Tex. Crim. App. 2000); Rosales v. State, 4 S.W.3d 228, 231 (Tex. Crim.
App. 1999). Under this standard, the appellant must prove that counsel's representation so
undermined the proper functioning of the adversarial process that the trial cannot be relied on as
having produced a just result. Strickland, 466 U.S. at 686.

 Our review of counsel's representation is highly deferential, with a strong presumption that
counsel's conduct fell within a wide range of reasonable representation. Id. at 689. We will not
second-guess through hindsight the strategy of counsel at trial, nor will the fact that another attorney,
including the attorney on appeal, might have pursued a different course support a finding of
ineffectiveness. Blott v. State, 588 S.W.2d 588, 592 (Tex. Crim. App. 1979) (en banc); Harner v.
State, 997 S.W.2d 695, 704 (Tex. App.--Texarkana 1999, no pet.). Any allegation of
ineffectiveness must be firmly founded in the record. Thompson v. State, 9 S.W.3d 808, 813 (Tex.
Crim. App. 1999). On direct appeal, the record has usually not been sufficiently developed to enable
an appellate court to adequately determine whether the appellant was provided ineffective assistance
of counsel. Id. at 814-15. A claim of ineffective assistance is better pursued by way of habeas
corpus, with which there is some opportunity for the record to have been developed regarding trial
counsel's reasons for his or her actions. See Goodspeed v. State, 187 S.W.3d 390 (Tex. Crim. App.
2005); Bone v. State, 77 S.W.3d 828, 836 (Tex. Crim. App. 2002).

(1) The Record Does Not Demonstrate Ineffective Assistance of Counsel Based on Counsel's Failure to Object to the State's Fact Hypotheticals During Voir Dire


 Bigham complains of four elements of her trial counsel's representation. First, Bigham
complains that, during voir dire, the State asked questions that sought impermissible commitment
answers from the veniremembers. For a commitment question to be proper, one of the possible
answers to that question must give rise to a valid challenge for cause. See Standefer v. State, 59
S.W.3d 177, 179-80 (Tex. Crim. App. 2001). To be proper, a commitment question must contain
only those facts necessary to test whether a prospective juror is challengeable for cause. Id. at 182. (1)

 There is one glaring problem with this claim by Bigham: to be an improper commitment
question, there must first be a question. Of the State's comments cited by Bigham in her brief, none
of them asked a question or sought a commitment from any veniremember. The State included some
veniremembers in its example of criminal liability as a party--germane since Bigham drove the
getaway vehicle for two other women--but did not pose a question to any juror and did not solicit
any reply that was a commitment, appropriate or otherwise. Preliminary in a Standefer analysis is
whether the question posed to the veniremember is a "commitment question." The State did describe
specific situations that were somewhat similar to the facts of Bigham's case, but it never posed any
question to the veniremembers seeking a commitment from any of them regarding how any such
situation would affect their verdict. And while the State's example involved two people stealing
shirts from a department store, the evidence in Bigham's case showed she drove a van with two
riders, who jumped out of the van and into Moreno's car, holding him up at knife point, and then
returned to Bigham's van and were driven away. Because the State's voir dire did not present a
Standefer issue, Bigham's trial counsel was not ineffective for failing to object to the State's
comments.

(2) The Record Does Not Demonstrate Ineffective Assistance of Counsel Based on Counsel's Failure to Strike a Crime Victim from the Jury


 Next Bigham contends her trial counsel was ineffective in failing to use a peremptory strike
against juror Gregory Allen Muckleroy. Bigham complains that, during voir dire, Muckleroy stated
that he had personally been burglarized three times and that the perpetrators had not been
apprehended. Muckleroy was placed on the jury and served as its foreman. Bigham's argument
consists of her statement that "[i]t certainly seems" a person such as Muckleroy, a victim of unsolved
crimes, "would be a poor choice to allow on the jury - a problem magnified by the fact that he was
the presiding juror." Just because another attorney would have handled a case or situation differently
does not render the trial attorney's performance ineffective. Blott, 588 S.W.2d at 592. And as
pointed out above, we have no indication of why trial counsel acted as he did, because the record
contains no testimony from trial counsel. We give significant deference to the trial attorney's
representation and will presume a valid strategy in the absence in the record of any explanation of
counsel's motivation. Thompson, 9 S.W.3d at 814. Counsel's competence is presumed, and an
appellant must rebut this presumption by proving that the challenged action was not sound trial
strategy. Kimmelman v. Morrison, 477 U.S. 365, 384 (1986) (citing Strickland, 466 U.S. at 688-89)
(defendant must overcome presumption that, under the circumstances, challenged action might be
considered sound trial strategy). Any allegation of ineffectiveness must be firmly founded in the
record, and the record must affirmatively demonstrate the alleged ineffectiveness. McFarland v.
State, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996). Failure to make the required showing of either
deficient performance or sufficient prejudice defeats the ineffectiveness claim. Id.

 In Delrio v. State, 840 S.W.2d 443 (Tex. Crim. App. 1992), a veniremember, Martinez, told
the trial court that he was an ex-narcotics officer and that he knew the defendant, who was on trial
for a drug offense, from his work as a narcotics officer. Martinez then told the trial court that he
could not be impartial in the defendant's trial. The Texas Court of Criminal Appeals held that, where
defense counsel failed to challenge Martinez for cause and then failed to use a peremptory challenge
against him, Delrio failed to demonstrate ineffective assistance of counsel. The court speculated as
to why defense counsel may have refused to remove Martinez from the venire, mentioning the
possibility that defense counsel may have sought to keep Martinez because he and the defendant
were both Hispanic and that defense counsel may have thought Martinez, as an ex-narcotics officer,
might be more lenient in assessing punishment. Noting that the record was silent as to the reasons
for defense counsel's decision not to challenge Martinez, and citing the strong presumption in
Strickland against a finding of ineffective assistance, the Texas Court of Criminal Appeals
determined the record insufficient to overcome that presumption. Id. at 446-47.

 Here, although veniremember Muckleroy stated he was a cousin to one of the State's
witnesses, Muckleroy also said he "wouldn't think so" when asked if he would hold his cousin's
testimony in any greater regard than any other witness. There is no evidence in the record indicating
Muckleroy was not impartial, and there is certainly insufficient evidence to overcome the
presumption of trial counsel's competence. See Strickland, 466 U.S. at 689. Trial counsel was not
ineffective for failing to strike this veniremember.

(3) The Record Does Not Demonstrate Ineffective Assistance of Counsel Based on Counsel's Failure to Object to the State's Reference to Community Supervision During Jury Argument


 Bigham complains next of statements made by the State's counsel during closing argument: 
The State said, "You've got somebody that works in the probation department on this jury. She'll
tell you how it works." Even assuming that this was improper jury argument, Bigham must satisfy
Strickland's two elements: that, by not objecting, trial counsel was constitutionally deficient; and
that, had an objection been lodged, the outcome of Bigham's trial likely would have been different. 

 We decline to say that it was ineffective assistance of counsel not to object to the State's
comment. An objection risks drawing further attention to the comment. And, absent any indication
from trial counsel indicating otherwise, we presume valid strategy in counsel's acts. Further, even
if Bigham could prove deficient performance by counsel, we find it very unlikely that the result of
her trial would have been different. From a range of punishment of five to ninety-nine years or life
in prison, the jury recommended a sentence of six years, almost the lowest punishment available. 
Also, Bigham's trial counsel argued for a punishment of five years with a recommendation of
community supervision, while the State urged a sentence of ten years but no community supervision. 
In that context, defense counsel clearly was successful in getting for Bigham a sentence significantly
below what the State sought. On the whole, we do not find that Bigham's counsel was deficient for
not objecting to the State's argument. And since the sentence assessed Bigham was just over the
minimum available, we find that no harm has been established. Counsel was not ineffective for not
objecting to the State's argument. 

(4) The Record Does Not Demonstrate Ineffective Assistance of Counsel Based on Counsel's Failure to Call Bigham as a Witness


 Finally, Bigham complains her trial counsel was ineffective for failing to put Bigham on the
stand to testify on her own behalf. Bigham did not make a record of what she would have said had
she been called to the stand. She did not move for a new trial and adduce testimony there as to what
she could have offered. The record is completely silent as to any reasons for or against Bigham
taking the stand. Likewise, there is no evidence at all to suggest that trial counsel in any way
prevented Bigham from testifying. There could clearly be a strategic reason for this decision; and
in the absence of evidence suggesting otherwise, we decline to speculate. 

 Because the record is simply inadequate to support Bigham's appellate contentions, we
overrule her sole point of error and affirm the trial court's judgment.



 Josh R. Morriss, III

 Chief Justice


Date Submitted: September 15, 2006

Date Decided: November 3, 2006


Do Not Publish

 
1. "[T]he inquiry for improper commitment questions has two steps: (1) Is the question a
commitment question, and (2) Does the question include facts -- and only those facts -- that lead to
a valid challenge for cause? If the answer to (1) is "yes" and the answer to (2) is "no," then the
question is an improper commitment question, and the trial court should not allow the question." 
Standefer, 59 S.W.3d at 182-83. 



t invokes the principles of Section 49.09(g) regarding the
prohibition of a practice commonly referred to as "double-dipping":
(g) A conviction may be used for purposes of enhancement under this section
or enhancement under Subchapter D, Chapter 12, but not under both this section and
Subchapter D.

Tex. Pen. Code Ann. § 49.09(g) (Vernon Supp. 2005).
            This argument was presented in Carroll v. State, 51 S.W.3d 797 (Tex. App.—Houston [1st
Dist.] 2001, pet. ref'd). There, the court explained that the above-quoted provision contemplated two
types of uses of a conviction—jurisdictional enhancement and punishment enhancement. A
conviction used under Section 49.09(b) raises the DWI to a felony grade and is an element of the
felony DWI. By comparison, a conviction used under Section 12.42 enhances the punishment. Id.
at 799. Only felony convictions may be used to enhance punishment under Section 12.42. Cause
No. 11,075-C is a misdemeanor conviction and could not be used for punishment enhancement for
the instant offense. 
            So, to the extent that McKinney's argument stands for the proposition that the State could not
use No. 11,075-C in its enhancement paragraphs, he is correct. Here, the State could not have used
No. 11,075-C in its enhancement allegations; the applicable repeat-offender provision only allows
the use of felony convictions to enhance punishment. See Tex. Pen. Code Ann. § 12.42(a)(3). 
However, we point out that the State did not directly use No. 11,075-C for punishment enhancement
purposes.
            The misdemeanor conviction in No. 11,075-C was used in each later DWI case for
jurisdictional enhancement—it was used in raising the offenses to the felony level, giving the district
court jurisdiction. See Gibson v. State, 995 S.W.2d 693, 696 (Tex. Crim. App. 1999). Therefore,
the conviction in No. 11,075-C was used only under Section 49.09, but was not used as punishment
enhancement under Chapter 12 of the Texas Penal Code. McKinney does not contend otherwise. 
McKinney's argument, instead, is based on the indirect relationship between No. 11,075-C and
No. 14362, the felony conviction that the State actually did use for enhancement. That is, since
No. 11,075-C (the misdemeanor conviction) was used as a jurisdictional element of the felony DWI
in No. 14362, the State indirectly "used" No. 11,075-C in its enhancement allegations. In this regard,
McKinney's contention fails.
            This argument has been rejected by the Houston First District Court in Carroll and by the
Fort Worth Court in Perez.


 In Carroll, the appellant urged a nearly identical argument as does
McKinney. Carroll contended that the State's enhancement allegation using a prior felony DWI
conviction which was elevated to such felony status through use of a prior misdemeanor DWI
conviction amounted to an impermissible use when the same misdemeanor DWI conviction was also
used as a jurisdictional element of the offense at issue. See Carroll, 51 S.W.3d at 799. The court
rejected this argument and held that the State did not "use" the prior misdemeanor conviction for
punishment enhancement since "no independent proof of its existence is required in the State's
burden of proof under section 12.42(d)." Id. at 801.
            Similarly, in Perez, the Fort Worth Court responded to the same argument by pointing out
that the prior misdemeanor DWI conviction and the prior felony DWI conviction—for which the
misdemeanor conviction was used as a jurisdictional element—were "separate and distinct
offense[s]." Perez, 124 S.W.3d at 215–16 (citing Gibson, 995 S.W.2d at 695–96). The court went
on to explain that the State was not required to plead or prove the prior misdemeanor DWI
conviction to use the prior felony DWI conviction for enhancement. See Perez, 124 S.W.3d at 216. 
Based on such reasoning, the court concluded that the State did not "use" the misdemeanor
conviction when it alleged the felony conviction to enhance punishment. See id. (citing Carroll, 51
S.W.3d at 801).
            Likewise, we conclude that the State did not use McKinney's prior misdemeanor DWI
conviction in No. 11,075-C when it alleged a prior felony DWI conviction that was predicated on
that misdemeanor conviction. Since only a felony conviction can be used to enhance the punishment
for a felony DWI, the State could not have used the misdemeanor conviction to enhance punishment
under Section 12.42(a)(3). See Carroll, 51 S.W.3d at 800. The State did not attempt to use the
misdemeanor conviction for that purpose. Nor did the State indirectly use the prior misdemeanor
DWI conviction when it used No. 14362, a prior felony DWI conviction in which the misdemeanor
conviction was used as a jurisdictional element, to enhance punishment here. In order to have
sufficiently proven during the trial on punishment that McKinney was convicted of felony DWI in
No. 14362, the State need not also have proven that McKinney was convicted of misdemeanor DWI
in No. 11,075-C. We, therefore, agree with our sister courts in Carroll and Perez and hold that the
State did not impermissibly use the prior misdemeanor DWI conviction in its punishment
allegations. 
            We overrule McKinney's contentions and affirm the trial court's judgment.
 

                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          February 21, 2006
Date Decided:             April 28, 2006

Do Not Publish